Christopher S. Marchese, (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
555 West Fifth Street, 31st Floor
Los Angeles, CA 90013
Telephone: (213) 533-4240
Facsimile: (858) 678-5099

Michael M. Rosen (SBN 230964), rosen@fr.com
Joanna M. Fuller (SBN 266406), jfuller@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Andrew R. Kopsidas (admitted *Pro Hac Vice*), kopsidas@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Attorneys for Plaintiff, CH$_2$O, INC.,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CH$_2$O, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MERAS ENGINEERING, INC.; HOUWELING'S NURSERIES OXNARD, INC.; HNL HOLDINGS LTD.; HOUWELING UTAH OPERATIONS, INC.; and HOUWELING'S NURSERIES LTD.,<br><br>　　　　Defendants. | Case No. CV-13-8418 JAK (GJSx)<br><br>**CH$_2$O, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　April 4, 2016<br>Time:　8:30 a.m.<br><br>Hon. John A. Kronstadt |

## I. INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, and in order to streamline this case for trial, Plaintiff CH$_2$O, Inc. ("CH$_2$O") hereby moves for summary judgment in its favor on the following issues:

1. Defendants' second and fourth affirmative defenses of invalidity to the extent they are based upon alleged prior art references that are undated and/or unauthenticated; and

2. Defendants' third affirmative defense of invalidity under 35 U.S.C. §§ 101 and 112.

Defendants' affirmative defenses were identically pled in Meras Engineering, Inc.'s Answer to First Amended Complaint for Patent Infringement (ECF No. 118 at 7-8) and Houweling's Nurseries Oxnard, Inc.; HNL Holdings Ltd.; Houweling Utah Operations, Inc.; and Houweling's Nurseries Ltd. Engineering, Inc.'s Answer to First Amended Complaint for Patent Infringement (ECF No. 123 at 7-9). There is no genuine issue of material fact that defendants cannot prevail on these affirmative defenses. All of the defenses at issue are subject to the clear and convincing burden of proof. Defendants' second and fourth defenses are based, in part, on alleged prior art references that are undated and/or unauthenticated, thus making them unreliable and incapable of constituting clear and convincing evidence. Judgment should also be entered against defendants' third affirmative defense because it is premised entirely on the opinion of defendants' expert, Dr. Bernard Bubnis, who applied the wrong standard. Thus, resources will be preserved by entering summary judgment in CH$_2$O's favor on these defenses.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is a tool to promote judicial economy and streamline trials. *See EMI Group North Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323-24.

"Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that there is an absence of evidence to support the non-moving party's case." *Travelers Indem. Co. v. Walker & Zanger, Inc.*, 221 F. Supp. 2d 1224, 1229 (S.D. Cal. 2002) (quoting *Celotex*, 477 U.S. at 325). "The moving party is not required to produce evidence showing the absence of genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990)).

**III. CH$_2$O IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' SECOND AND FOURTH AFFIRMATIVE DEFENSES OF INVALIDITY TO THE EXTENT THEY ARE BASED UPON ALLEGED PRIOR ART REFERENCES THAT ARE UNDATED AND/OR UNAUTHENTICATED**

The '470 patent is presumed to be valid under 35 U.S.C. § 282(a). The burden of establishing invalidity is on the defendants and, to succeed, defendants must come forth with **clear and convincing evidence**. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S.Ct. 2238, 2242 (2011). Whether a reference qualifies as "prior art" and whether it was publicly available prior to the '470 patent are questions of law based on underlying factual considerations. *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1379-80 (Fed. Cir. 2012). However, in this case, there is no evidence that the following references qualify as prior art.

Defendants' expert has alleged invalidity using over 20 references in his invalidity expert report. Addressing that many references at trial will be unwieldy and confusing to the jury. Moreover, a number of defendants' alleged prior art references are undated and/or unauthenticated. As such, defendants cannot establish clearly and convincingly that these references qualify as prior art. The references and their flaws are described briefly below:

- <u>Deininger (Ex. 1)</u>: This reference bears no date and is unauthenticated. Thus, defendants cannot establish by clear and convincing evidence that it qualifies as publicly available prior art. *See In re NTP, Inc.*, 654 F.3d 1279, 1295 (Fed. Cir. 2011) (authenticity of alleged prior art documents must be supported by "substantial evidence"); *Nordock Inc. v. Systems Inc.*, No. 11-C-118, 2013 WL 989864 at *3 (E.D. Wis. Mar. 13, 2013) (excluding undated and unauthenticated references from being used as prior art).

- <u>Will (Ex. 2)</u>: This reference bears no date and is unauthenticated. Thus, defendants cannot establish by clear and convincing evidence that it qualifies as publicly available prior art. *See NTP*, 654 F.3d at 1295; *Nordock*, 2013 WL 989864 at *3.

- <u>Roberts (Ex. 3)</u>: This document is ostensibly a research paper dated October 1980, however, there is no evidence that the document is what it purports to be or that it was publicly available prior to the date of the '470 patent. *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008) (a reference is publicly available if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it."); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) (public accessibility is the "touchstone in determining

whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)."). It has not been authenticated, nor has its availability to the public prior to the '470 patent been established.

- Cox (Ex. 4): This document is a printout of an Internet page bearing a copyright date of 2015. There is no evidence that the document is what it purports to be or that it was publicly available prior to the date of the '470 patent. There is also no evidence that the document has not been recently revised given that its copyright date is 2015. The document is unauthenticated and unreliable, and thus cannot amount to clear and convincing evidence. *See Kyocera Wireless*, 545 F.3d at 1350; *In re Hall*, 781 F.2d at 899; *see also Silver State Intellectual Techs., Inc. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1170-71 (Fed. Cir. 2014) (finding Internet press release unauthenticated hearsay in absence of testimony from personally knowledgeable witness).

- Flood (Ex. 5): This document purports to be a report from the Canadian British Columbia Ministry of Agriculture, Fisheries and Food with an ostensible revision date of April 1996. However, there is no evidence that the document is what it purports to be or that it was publicly available prior to the date of the '470 patent. *See Kyocera Wireless*, 545 F.3d at 1350; *In re Hall*, 781 F.2d at 899. It has not been authenticated, nor has its availability to the public prior to the '470 patent been established. *See NTP*, 654 F.3d at 1295.

- Bailey (Ex. 6): This document purports to be a research paper from the Department of Horticultural Sciences at the North Carolina State University bearing a revision date of August 1997. However, there is no evidence that the document is what it purports to be or that it was publicly available prior to the date of the '470 patent. *See Kyocera Wireless*, 545

F.3d at 1350; *In re Hall*, 781 F.2d at 899. It has not been authenticated, nor has its availability to the public prior to the '470 patent been established. *See NTP*, 654 F.3d at 1295.

- Southern Ag (Ex. 7): This document appears to be a product specification for a fertilizer product bearing a revision date of 1998. There is no evidence that the document is what it purports to be, that it accurately represents any product, or that it was publicly available prior to the date of the '470 patent. *See Kyocera Wireless*, 545 F.3d at 1350; *In re Hall*, 781 F.2d at 899. It has not been authenticated, nor has its availability to the public prior to the '470 patent been established. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 865-66 (Fed. Cir. 2010) (product manuals did not qualify as prior art where "[t]here was no evidence as to the source, publication, or public accessibility of either manual" and no evidence was presented that the manuals were ever disseminated to the public).

Because the evidence does not establish clearly and convincingly that the foregoing references are prior art and were publicly available prior to the '470 patent, defendants cannot succeed as a matter of law on any invalidity defense based on these questionable references. Accordingly, summary judgment should be granted that the '470 patent is not invalid in view of any of the foregoing references, alone or in combination with other references.

## IV. CH$_2$O IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' THIRD AFFIRMATIVE DEFENSE OF INVALIDITY UNDER 35 U.S.C. §§ 101 AND 112

Defendants' third affirmative defense alleges that the '470 patent is invalid "for failing to meet the utility and operability requirements as set forth is [*sic*] 35 U.S.C. §§ 101, 112, or both." (Meras Engineering, Inc.'s Answer to First Amended Complaint for Patent Infringement (ECF No. 118 at 7).) In response to an interrogatory seeking the legal and factual bases for defendants' invalidity defenses, defendants did not even mention this defense.[1] (*See* Defendant Meras Engineering Inc.'s Amended and Supplemental Response to CH$_2$O, Inc.'s First Set of Interrogatories at 8-9 (Interrog. No. 5) (Ex. 8); Houweling's Nurseries Oxnard, Inc.'s Responses and Objections to Plaintiff CH$_2$O's First Set of Interrogatories at 9 (Interrog. No. 5) (Ex. 9).)

Defendants' expert, Bernard Bubnis, opined that the claims of the '470 patent are invalid under 35 U.S.C. § 101 as being inoperable, and under 35 U.S.C. § 112 as not being enabled. (Expert Invalidity Report by Bernard Bubnis, Ph.D. ("Bubnis Inv. Rpt.") at 61-70 (Ex. 10).) The primary basis for Dr. Bubnis's opinion is that he "had never read any literature purporting to show sodium molybdate as a catalyst for the conversion of sodium chlorite into chlorine dioxide," as recited in claim 1 of the '470 patent. (*Id*. at 62.) Of course he had not. That is one of the reasons CH$_2$O was granted a patent on its invention. The standard Dr. Bubnis applies is not the proper one under §§ 101 and 112.

---

[1] Defendants also failed to raise invalidity under 35 U.S.C. § 101 in their invalidity contentions. Accordingly, that argument has been waived. (*See* Init. Standing Order for Patent Cases Assigned to Judge John A. Kronstadt, § 2.5.4 (requiring invalidity contentions to include grounds of invalidity based on 35 U.S.C. §§ 101 and 112); *see also* Invalidity Contentions of Defendant Houweling's Nurseries Oxnard, Inc., HNL Holdings Ltd., Houweling Utah Operations, Inc., and Houweling's Nurseries Ltd., under S.P.R. 4.2 [Amended] dated Feb. 10, 2016 (Ex. 11); Defendant Meras Eng.'s Inc.'s Amended and Final Invalidity Contentions dated Jan. 5, 2016 (Ex. 12).)

1  "A claimed invention is deemed inoperative under section 101 when it requires the impossible or an unattainable result. Therefore, only when a claimed invention has total incapacity to achieve what is claimed is it deemed inoperable." *Transco Products, Inc. v. Performance Contracting, Inc.*, 121 F.3d 728 at *5 (Fed. Cir. 1997). The defense of inoperability is rarely applied to invalidate a patent. *See e.g.*, *In re Swartz*, 232 F.3d 862 (Fed. Cir. 2000) (cold fusion). The fact that Dr. Bubnis was unaware that sodium molybdate can be used to catalyze the generation of chlorine dioxide is immaterial to whether the invention "has total incapacity to achieve what is claimed." Moreover, that Dr. Bubnis believes "there are no data whatsoever in the '470 Patent presented to support that claim" (Bubnis Inv. Rpt. at 63 (Ex. 10)), is also not the standard. There is no requirement in patent law, nor have defendants cited any, that requires a patentee to include within the specification the type of data Dr. Bubnis demands. Additionally, the '470 patent was not deemed inoperable by the Patent Office in either the original prosecution or the reexamination. Thus, defendants cannot overcome—by clear and convincing evidence—the '470 patent's presumption of validity with nothing more than the opinion of their expert applying the incorrect standard.

The enablement requirement of 35 U.S.C. § 112, ¶ 1 requires that the specification adequately discloses to one skilled in the relevant art how to make, or in the case of a process, how to carry out, the claimed invention without undue experimentation. *See Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997).

Claim 1 of the '470 patent recites:

1. A method of treating flowing water in a water distribution system, comprising:

   admixing a sodium chlorite solution with a second solution containing an acid to make a reacted mixture wherein the second solution is

   acidic enough to convert the sodium chlorite into chlorine dioxide
while remaining unaffected in the reacted mixture;

 using sodium molybdate as a catalyst to enhance conversion of the sodium chlorite into chlorine dioxide; and

 introducing a predetermined amount of the reacted mixture into said water distribution system to inhibit and/or eliminate bacterial fouling in the system;

 wherein the second solution inhibits and/or removes mineral deposits in the water system.

To satisfy the enablement requirement, the specification must describe the manner of making and using the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same...." 35 U.S.C. § 112, ¶ 1. The '470 patent's specification clearly provides such a description. First, the claim language itself is perfectly clear as to what chemicals should be mixed. Moreover, the specification explains that "the reaction of PBTC with sodium chlorite might be greatly accelerated and reaction time greatly reduced, by the inclusion of small amount of a catalyst such as, but not limited to, sodium molybdate in the PBTC component prior to admixing it with the sodium chlorite component." (*See, e.g.*, '470 Patent at 3:63-4:3 (Ex. 13).) The specification goes on to provide multiple examples of combining the recited chemicals in the manner claimed. (*Id.* at 3:5-42.) The specification further describes the claimed process, and the reasons for and benefits of combining the chemicals as recited. (*Id.* at 3:43-4:24.) Furthermore, the patent describes an exemplary system and equipment that can be used to perform the recited steps. (*Id.* at 2:20-67; Fig. 1.) The fact that Dr. Bubnis was unaware of this invention prior to reading the '470 patent is of no moment in determining whether the claims satisfy the enablement requirement of 35 U.S.C. § 112.

Finally, Defendants' only other basis for challenging the validity of the asserted claims under §§ 101 and 112 is Dr. Bubnis's disagreement with $CH_2O$'s infringement testing. (*See* Bubnis Inv. Rpt. at 65-67 (Ex. 10).) Again, defendants confuse the relevant standard. Whether there are any issues with $CH_2O$'s test data and protocols goes to whether $CH_2O$ can establish infringement by a preponderance of the evidence, not whether the claims of the '470 patent are valid under §§ 101 and 112.

Accordingly, the Court should find that the defendants cannot establish by clear and convincing evidence that the claims of the '470 patent are invalid under 35 U.S.C. §§ 101 and 112, and grant summary judgment in favor of $CH_2O$ on defendants' third affirmative defense.

## V. CONCLUSION

$CH_2O$ respectfully requests that the Court grant summary judgment in its favor on each of the foregoing issues.

Dated: March 1, 2016          FISH & RICHARDSON P.C.

By: */s/ Joanna M. Fuller*
   Joanna M. Fuller
   jfuller@fr.com

Attorneys for Plaintiff, $CH_2O$, INC.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 1, 2016, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail and regular mail.

/s/ *Joanna M. Fuller*
Joanna M. Fuller
jfuller@fr.com