1  Christopher S. Marchese (SBN 70239), marchese@fr.com
2  FISH & RICHARDSON P.C.
   555 West Fifth Street, 31st Floor
3  Los Angeles, CA 90013
   Telephone: (213) 533-4240
4
5  Joanna M. Fuller (SBN 266406), jfuller@fr.com
   Oliver J. Richards (SBN 310972), orichards@fr.com
6  FISH & RICHARDSON P.C.
   12390 El Camino Real
7  San Diego, CA 92130
   Telephone: (858) 678-5070
8
9  Andrew R. Kopsidas (admitted *pro hac vice*), kopsidas@fr.com
   FISH & RICHARDSON P.C.
10 1425 K Street, N.W., 11th Floor
   Washington, DC 20005
11 Telephone: (202) 783-5070

12 Michael M. Rosen (SBN 230964), michael@rosentechlaw.com
   ROSEN TECHNOLOGY LAW P.C.
13 984 Oxford Street
14 Berkeley, CA 94707
   Telephone: (858) 692-1906
15
16 Attorneys for Plaintiff, CH$_2$O, Inc.

17                UNITED STATES DISTRICT COURT
18       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CH$_2$O, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MERAS ENGINEERING, INC.; HOUWELING'S NURSERIES OXNARD, INC.; HNL HOLDINGS LTD.; HOUWELING UTAH OPERATIONS, INC.; and HOUWELING'S NURSERIES LTD.,<br><br>　　　　Defendants. | Case No. CV-13-8418 JAK (GJSx)<br><br>**CH$_2$O, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ENHANCED DAMAGES AND RESPONSE TO OPPOSITION OF THE HOUWELING'S DEFENDANTS**<br><br>Date: March 6, 2017<br>Time: 8:30 a.m.<br>Courtroom: 750<br>Hon. John A. Kronstadt |

## I. INTRODUCTION

CH$_2$O hereby submits the following reply in support of its Motion for Enhanced Damages (D.I. 482) and in response to The Houweling's Defendants' Opposition to CH$_2$O, Inc.'s Motion for Enhanced Damages (D.I. 495). Because Meras and Houweling's each responded separately to CH$_2$O's motion (*see* D.I. 490 and 495), CH$_2$O offers separate replies. This reply addresses the Houweling's Defendants' (collectively, "Houweling's") opposition.

Houweling's argues that its indemnification agreement with Meras shields it from enhanced damages. To the contrary, Houweling's reliance on another party to investigate possible infringement on its farm, where it uses chemicals that it owns and equipment that it leases, was unreasonable and adds, rather than detracts, from its culpability. Houweling's also argues that it left CH$_2$O because of business reasons unrelated to obtaining the patented technology for cheaper. But this self-serving version of the facts was rejected by the jury and is belied by testimony that Houweling's continued to recommend CH$_2$O to other businesses. The actual evidence presented at trial leads only to one conclusion: Houweling's willfully and wantonly infringed the patent.

A trebling of the jury's damages award is appropriate and enhanced damages ought to be awarded against Meras and Houweling's, jointly and severally. Accordingly, the Court should consider the actions of Defendants as a whole in considering whether to enhance damages. Here, as laid out in CH$_2$O's opening motion, both Defendants engaged in deliberate, intentional infringement of the '470 patent, affording both Defendants substantial gain and causing significant harm to CH$_2$O. The Defendants were aware of CH$_2$O's patent rights during the entire course of their infringing activity, and neither presented any evidence of a reasonable investigation or any other actions that might mitigate their culpability. Instead, the evidence presented at trial showed that, at best, Defendants were indifferent to possible infringement or, at worst, Defendants copied CH$_2$O's product and used

former $CH_2O$ employees to displace $CH_2O$ from the very market it invented.

$CH_2O$'s motion for enhanced damages should be granted.

## II. ARGUMENT

### A. Both Defendants Should Be Jointly and Severally Liable for Enhanced Damages

As discussed extensively in $CH_2O$'s concurrently-filed reply to Meras's opposition to the motion for enhanced damages, the Court should consider the actions of both Defendants collectively and award enhanced damages levied against both Defendants jointly and severally. Such a decision is in line with the jury's finding that both Defendants collectively and willfully infringed the patent.

### B. The Evidence at Trial Supports the Jury's Willfulness Finding and Enhancement Against Houweling's

The jury found that Houweling's "acted in a manner that was wanton, malicious, in bad-faith, deliberate, consciously wrongful or flagrant," mirroring the exact language from the Supreme Court in *Halo Electronics., Inc. v. Pulse Electronics., Inc.* (See D.I. 418, at 25); *see also Halo*, 136 S. Ct. 1923, 1932 (2016). With respect to Houweling's, the basic facts are as follows:

Houweling's was aware that $CH_2O$'s process for creating chlorine dioxide was proprietary beginning in 2006, when Mr. Iverson sold Houweling's on the untested technology, telling Mr. Houweling that $CH_2O$ "had a patent on it" and that "it's exclusive to" $CH_2O$. (D.I. 482-3, Tr. (Iverson) at 176:11-24 (emphasis added).) Houweling's became additionally aware of the '470 patent in 2013—Mr. Houweling admitted at trial that he knew of the patent "prior to engaging with Meras." (D.I. 482-3, Tr. (Houweling) at 1157:6-9.)

When $CH_2O$'s executives approached Mr. Houweling to let him know they were concerned about infringement of the '470 patent, Mr. Houweling "didn't seem to care" because, in his view, the patent infringement "was a matter between $CH_2O$ and Meras." (D.I. 482-3, Tr. (Iverson) at 177:7-9; *id.* Tr. (McNamara) at 292:7-8.)

Notably, Mr. Houweling testified at trial that he was the "chairman of the Houweling's group of companies" and that he was "responsible for everything that happens" in his companies. (*See* Ex. 1, Tr. (Houweling) at 1141:3-5; *id.* at 1180:7-13.) And Mr. Houweling admitted that Houweling's did no investigation as to whether its activities were infringing. (D.I. 482-3, Tr. (Houweling) at 1159:17-1160:23.) Instead, Houweling's expanded its course of infringing activities, switching its farms over to Meras from $CH_2O$. (D.I. 482-3, Tr. (McNamara) at 292:16-19; *id.* Tr. (Houweling) at 1172:17-1173:14.)

In short, Houweling's actions comported with Mr. Houweling's statement that the "[e]asiest things [sic] to do is to copy somebody else." (D.I. 482-3, Tr. (Houweling) at 1161:25-1162:5.) This philosophy exemplifies conduct that is "wanton, malicious, in bad-faith, deliberate, consciously wrongful or flagrant." *Halo*, 136 S. Ct. at 1932.

Houweling's argues that the history of the parties' relationship does not warrant a finding of willfulness or an award of enhanced damages. In Houweling's re-telling of history, Houweling's switched away from $CH_2O$ to Meras because of unsatisfactory results. (*See* D.I. 495, at 11-12.) However, this story was presented to the jury (*see generally* Ex. 1, Tr. (Houweling) at 1151:2-1153:5), and the jury implicitly rejected this testimony by finding Houweling's willfully infringed. The jury was entitled to do so, especially in light of testimony that Mr. Houweling recommended $CH_2O$ to a business colleague for advice well after the alleged breakdown in their relationship. (*See* Ex. 1, Tr. (McNamara) at 298:12-299:20.) This Court should similarly reject this self-serving narrative.

Houweling's also argues that infringement was not willful because Defendants were unaware of $CH_2O$'s theory of infringement at trial. (*See* D.I. 495, at 12-13.) But, as has been discussed in previously-filed briefs, this argument has no bearing on a finding of willfulness, was never raised at trial, and was shown to be contrary to the facts. (*See* D.I. 497, at 5-8; D.I. 498, at 24-25; *see also* Ex. 2 where Mr. Houweling's

was questioned about sodium molybdate catalyzing residual chlorite in the pipes at Houweling's into chlorine dioxide).)

### C. Houweling's Unreasonable Reliance on Indemnification by Meras Adds, Rather than Subtracts, from its Culpability

Houweling's argues that Meras's promise to indemnify it from damages for patent infringement acts a shield to a finding of willful infringement. However, this is not such a case where the indemnification agreement mollifies Houweling's culpability. Rather, Houweling's reliance on a contractor to conduct an investigation as to whether infringement was occurring at its farm was unreasonable and supports a finding of willfulness and an award of enhanced damages.

Houweling's cites *Spectralytics, Inc. v. Cordis Corp.* for the proposition that a finding of willfulness and an award of enhanced damages against an indemnified party are unwarranted. 834 F. Supp. 2d 920, 926 (D. Minn. 2011), *aff'd*, 485 F. App'x 437 (Fed. Cir. 2012). But *Spectralytics* does not stand for such a broad proposition. In *Spectralytics*, the court noted that a larger entity had indemnified a smaller entity which in essence "function[ed] as an in house" manufacturer for the larger entity. And the court noted that in those circumstances, it made sense for the smaller entity to rely on the larger entity to conduct a reasonable investigation into infringement. Specifically, the court stated that it could not find fault that the smaller indemnified party did not conduct an "independent investigation" into possible infringement, but instead relied on the party with "far greater resources at its disposal" to conduct a reasonable investigation. *See id.*

Here, the circumstances are quite different. Houweling's is unquestionably a larger entity that contracted out part of its operation to Meras. Thus, here, it does not make sense for Houweling's to rely on Meras to conduct an investigation particularly when, as Mr. Houweling testified, Houweling's leases the equipment used to infringe, the equipment is installed on the premises of Houweling's facilities, and that Houweling's "actually buy[s]" the precursor chemicals and "own[s] them"—"the

very chemicals that go into the equipment to make chlorine dioxide." (*See* Ex. 1, Tr. (Houweling) at 1180:21-1181:21.) Moreover, in addition to Meras being aware that the technology was patented, Mr. Houweling himself was aware of that fact prior to switching to Meras. (D.I. 482-3, Tr. (Houweling) at 1157:6-9.) Instead, Houweling's ignored $CH_2O$'s assertion of patent infringement and tried to shift its responsibility to a contractor one-tenth its size, that it hired to perform the infringing activities. Because Houweling's reliance on Meras for indemnification was unreasonable, Houweling's is even more complicit in the willful infringement. *See Jurgens v. McKasy*, 927 F.2d 1552, 1562 (Fed. Cir. 1991) (finding that an infringer's unreasonable reliance on an indemnification agreement supported a verdict of willfulness and award of double damages).

### D. The *Read* Factors Weigh in Favor of Treble Damages

Houweling's generally responds to $CH_2O$'s presentation of the *Read* factors by pointing the finger at Meras. (*See, e.g.*, D.I. 495, at 14 ("$CH_2O$'s assertion that there is evidence of copying is accordingly directed at Meras, not Houwelings"); *id.* at 15 (with respect to a good faith belief, "$CH_2O$ refers only to actions by Meras, [and] not any of Houwelings"); *id.* at 24 ("Regarding the 'motivation for harm' factor, $CH_2O$ once again refers only to actions by Meras, not Houwelings").) As noted above and in the concurrently-filed reply to Meras's response, enhanced damages should be levied against both Defendants, jointly and severally, based on both Defendants' conduct. Houweling's other arguments are similarly unavailing.

#### 1. Copying

Houweling's denies copying, arguing that the only evidence presented by $CH_2O$ applies to Meras. (*See* D.I. 495, at 14.) But Houweling's, for its part, hired Meras to perform the same service as $CH_2O$ for less money despite knowing that $CH_2O$'s method of producing chlorine dioxide was patented. (*See* D.I. 482-3, Tr. (Iverson) at 170:13-21; *id.* Tr. (McNamara) at 292:16-19; *id.* Tr. (Houweling) at 1157:6-9.) In essence, Houweling's hired Meras to reproduce, or copy, the $CH_2O$

method.

In addition, Houweling's conflates copying the preferred embodiment from the patent with copying a patented product. (*See* D.I. 495, at 14-15.) But as discussed in the concurrently-filed reply to Meras's response, this factor does not require that the infringer crib from the patent and copy the preferred embodiment—rather, this factor weighs in favor of enhancement when, as here, the infringer copies the patented product while knowing that it is patented.

## 2. Good Faith Belief in Non-Infringement or Invalidity

Houweling's does not deny that it conducted no investigation as to possible infringement. In response, Houweling's only offers obfuscation. Houweling's argues that it reasonably relied on Meras to investigate infringement and invalidity. (*See* D.I. 495, at 15-16.) But Houweling's, notably, does not dispute that Meras lacked a good faith belief in non-infringement or invalidity. Further, as discussed above, Houweling's reliance on Meras to investigate infringement on its farm was unreasonable.

Houweling's also points to letters sent in 2013 stating Meras and Houweling's belief they do not infringe because they did not add sodium molybdate to the reaction chamber. Houweling's argues that these letters—sent by (at the time) ***Meras's*** counsel demonstrate ***Houweling's*** reasonable belief in non-infringement and lay out the same theory Defendants presented at trial. (*See* D.I. 495, at 16; *see also* D.I. 495-2 and 495-3.) But $CH_2O$'s theory of infringement did not rely on adding sodium molybdate to the reaction chamber—a fact Houweling's was aware of long before trial. (*See* D.I. 497, at 5-8; D.I. 498, at 24-25; Ex. 2.)

## 3. Size and Financial Condition

Houweling's does not dispute that its revenues are multiples of $CH_2O$'s. Instead, Houweling's argues that it is not in a good enough financial condition to pay enhanced damages. (*See* D.I. 495, at 18-19.) But Houweling's argument is predicated on two incorrect assumptions:

First, any enhanced damages should be levied against both Defendants jointly and severally, so any discussion of whether each individual entity would be able to pay the entire enhanced damages amount is irrelevant. Houweling's offers no argument as to whether it, together with Meras, would be able to pay an enhanced damages award.

Second, Houweling's entire argument about financial condition is premised on only two of the four Houweling's entities found to infringe. (*See* D.I. 495, at 19 n. 6 & n.7.) But as discussed in CH$_2$O's response to Houweling's motion to amend the judgment (D.I. 487), judgment was properly entered against all four Houweling's entities. Houweling's vigorous attempt to exclude these other Houweling's entities from the judgment and from any analysis of Houweling's ability to pay enhanced damages suggests that, indeed, the Houweling's defendants do have enough assets to pay an enhanced damages award.

### 4. Closeness of the Issues

As with Meras, Houweling's does not dispute that it put on essentially no invalidity case, that its expert admitted equivalence as to ammonium molybdate, and that Defendants admitted performing every step of the patented process except using sodium molybdate as a catalyst. Even if objective reasonableness of litigation-inspired defenses[1] were relevant, which it is not, this case could not be considered close. *See WBIP v Kohler*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Proof of an objectively reasonable litigation-inspired defense to infringement is no longer a

---

[1] As noted in reply to Meras's response, *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016), holds only that the objective reasonableness of a belief regarding infringement at the time of the challenged conduct may be relevant to a willfulness/enhanced damages analysis. Houweling's incorrectly asserts that its litigation defense is still relevant because it was the same as what was stated in letters sent by Defendants' counsel in 2013. In those letters, Meras contended that it did not infringe because it did not add sodium molybdate to the reaction chambers. At trial, CH$_2$O showed that unreacted chlorite is catalyzed by sodium molybdate outside of the reaction chamber. Defendants' only litigation-inspired response was to criticize CH$_2$O's catalysis tests, and it was undisputed that they did not perform their own tests.

CH$_2$O'S REPLY ISO MOTION FOR ENHANCED DAMAGES - HOUWELING'S
7   Case No. CV-13-8418 JAK (GJSx)

defense to willful infringement."). Houweling's arguments to the contrary—reliance on the 2013 letters and "the tenuous nature" of CH$_2$O's infringement theory (i.e. "minimal" infringement)—are baseless and incorrect as discussed above and in CH$_2$O's concurrently filed brief in reply to Meras.

### 5. Duration of Misconduct

Houweling's does not dispute that it knew of the '470 patent during the entire course of its infringing activity. Nor could it in light of Mr. Houweling's admission at trial that he was aware of the patent "prior to engaging with Mears." (D.I. 482-3, Tr. (Houweling) at 1157:6-9.) In fact, Houweling's entire argument does not focus on the *duration* of the misconduct; instead, Houweling's asserts that there was no misconduct because it is entitled to JMOL on literal infringement and it switched to ammonium molybdate. (*See* D.I. 495, at 22-23.) But, as is discussed in CH$_2$O's response to Defendant's motion for JMOL, the jury correctly concluded that Houweling's literally infringed. (*See* D.I. 498, at 2-5.) And, in light of Defendants' expert readily admitting at trial that ammonium molybdate is equivalent to sodium molybdate (*see* D.I. 482-3, Tr. (Bubnis) at 1239:8-11), Houweling's argument that using ammonium molybdate was not misconduct is meritless.

### 6. Remedial Actions

Houweling's does not deny that the only remedial action it took in response to CH$_2$O's charges of infringement was switch to ammonium molybdate. Defendants' expert admitted at trial that ammonium molybdate is equivalent to sodium molybdate. (*See* D.I. 482-3, Tr. (Bubnis) at 1239:8-11 (Defendants' expert admitting that "from a scientific standpoint, … they're equivalent. There's no difference").) Switching from one infringing compound to another can hardly be considered a remedial action that would mitigate Houweling's culpability for willfully infringing the '470 patent.

Houweling's also argues that its post-judgment conduct should be relevant to whether enhanced damages are warranted for its past willful infringement. "[C]ulpability is generally measured against the knowledge of the actor ***at the time of***

*the challenged conduct.*" *Halo*, 136 S. Ct. at 1933 (emphasis added). Houweling's post-judgment actions are not relevant for enhancement purposes.

### 7. Motivation for Harm

Houweling's argues that $CH_2O$'s only evidence of a motivation for harm relates to Meras. Certainly, Meras's actions are relevant to this factor. For its part, Houweling's switched to a cheaper infringing competitor after knowing about the '470 patent and after two $CH_2O$ executives approached Mr. Houweling trying to convince him to stay. (*See* D.I. 482-3, Tr. (Iverson) at 177:7-9; *id.* Tr. (McNamara) at 292:7-8.) Houweling's did this despite a long-standing relationship in which $CH_2O$ first proved the effectiveness of its new technology at a Houweling's farm. (*See* D.I. 482-3, Tr. (Iverson) at 158:1-4.) Houweling's actions, at least, evidence indifference and apathy to any potential economic harm the patent infringement would cause to $CH_2O$.

### 8. Concealment

Houweling's does not dispute that the hydroponic irrigation market is "secretive," (D.I. 482-3, Tr. (Iverson) at 244:5), making analysis of infringement difficult. Thus, concealment favors enhancement.

## III. CONCLUSION

$CH_2O$'s motion for enhanced damages should be granted.

Dated: January 30, 2017

FISH & RICHARDSON P.C.

By: */s/ Christopher S. Marchese*
    Christopher S. Marchese
    marchese@fr.com
Attorneys for Plaintiff, $CH_2O$, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 30, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail and regular mail.

/s/ Christopher S. Marchese
Christopher S. Marchese
marchese@fr.com