Christopher S. Marchese (SBN 70239), marchese@fr.com
FISH & RICHARDSON P.C.
555 West Fifth Street, 31st Floor
Los Angeles, CA 90013
Telephone: (213) 533-4240

Joanna M. Fuller (SBN 266406), jfuller@fr.com
Oliver J. Richards (SBN 310972), orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

Andrew R. Kopsidas (admitted *pro hac vice*), kopsidas@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone: (202) 783-5070

Michael M. Rosen (SBN 230964), michael@rosentechlaw.com
ROSEN TECHNOLOGY LAW P.C.
984 Oxford Street
Berkeley, CA 94707
Telephone: (858) 692-1906

Attorneys for Plaintiff, CH2O, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CH2O, INC.,<br><br>             Plaintiff,<br><br>     v.<br><br>MERAS ENGINEERING, INC.;<br>HOUWELING'S NURSERIES<br>OXNARD, INC.; HNL HOLDINGS<br>LTD.; HOUWELING UTAH<br>OPERATIONS, INC.; and<br>HOUWELING'S NURSERIES LTD.,<br><br>             Defendants. | Case No. CV-13-8418 JAK (GJSx)<br><br>**CH2O, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION AND RESPONSE TO THE HOUWELING'S DEFENDANTS' OPPOSITION THERETO**<br><br>Date:  March 6, 2017<br>Time:  8:30 a.m.<br>Courtroom:  750<br>Hon. John A. Kronstadt |

## I.    INTRODUCTION

CH$_2$O, Inc. ("CH$_2$O") submits the following reply in support of its Motion for Permanent Injunction (D.I. 481) and in response to The Houweling's Defendants' Opposition (D. I. 496). Because Meras and Houweling's each responded separately to CH$_2$O's motion (see D.I. 492 and 496), CH$_2$O offers separate replies. This reply addresses the Houweling's Defendants' (collectively, "Houweling's") opposition.

CH$_2$O is entitled to a permanent injunction to prevent Houweling's from resuming its infringement of the '470 patent. As detailed in its opening brief, Houweling's infringement irreparably harmed CH$_2$O and the jury's award of damages does not make CH$_2$O whole. Although Houweling's now claims that it no longer uses the patented method at its farms, absent an injunction, Houweling's may do what it has done before—namely, switch to a low-cost infringer to obtain the benefits of the patented process. Indeed, if Houweling's has switched to an alternative treatment method, then the injunction should do it no harm.

Houweling's gained significant benefits from the infringing use of the patented technology, providing a significant incentive to use the infringing technology instead of their current technology, which was proven at trial be more expensive and less effective. Absent an injunction, Houweling's would be free to return to its old ways and to continue causing irreparable harm to CH$_2$O.

## II.    ARGUMENT

### A.    Houweling's Voluntary Cessation from Infringement Does Not Exempt it from a Permanent Injunction

"It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to their old ways." *Allee v. Medrano*, 416 U.S. 802, 810–11 (1974); *see also*, *e.g.*, *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986) (recognizing that there is no requirement to prove ongoing unlawful behavior to obtain an injunction). "Voluntary

1    cessation of challenged conduct moots a case . . . only if it ***absolutely*** clear that the

2    allegedly wrongful behavior could not reasonably be expected to recur." *Adarand*

3    *Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (emphasis in original); *see also*

4    *Jacobsen v. Katzer*, 535 F.3d 1373, 1377 (Fed. Cir. 2008) (applying *Adarand* in the

5    context of an injunction against continued copyright infringement).

6          Houweling's asserts that it no longer uses infringing technology at its

7    California and Utah facilities, instead opting for a hydrogen peroxide-based method.

8    (*See* D.I. 485-2, at 1.) However, the evidence at trial established that hydrogen

9    peroxide is inferior to the patented chlorine dioxide method. At trial, Dr.

10   Hermanowicz testified that hydrogen peroxide "decomposes very rapidly," which

11   "means it will kill microorganisms perhaps not as efficiently as chlorine dioxide," and

12   "does not have any residual in the distribution system." (Ex. 1, Tr. (Hermanowicz) at

13   931:10-15.) Mr. Iverson testified that Houweling's had already tried, but abandoned,

14   use of hydrogen peroxide before switching to CH2O's patented technology:

15   "hydrogen peroxide is a very strong oxidizer. And it's very reactive. So once it reacts

16   with all the fertilizer, the chemical fertilizers and metals in the water, it gets used up,

17   decomposed." (Ex. 1, Tr. (Iverson) at 160:8-20.) Thus, as Mr. Iverson explained,

18   hydrogen peroxide "just doesn't work. You can't uniformly apply hydrogen peroxide

19   throughout the irrigation network at a low dose." (*Id.* at 160:16-20.)

20         CH$_2$O's patented method, on the other hand, provides Houweling's significant

21   benefits. When Houweling's began using the patented method, the water recirculation

22   rate increased from zero to over ninety percent (D.I. 481-4, Tr. (Iverson) at 164:20-

23   25); bacteria counts at the facilities were reduced from 100,000 to zero (*id.* at 163:20-

24   21); equipment, such as filters, lasted longer (*id.* at 163:16-18); and water

25   consumption decreased by 184 million gallons per year (*id.* Tr. (Houweling) at

26   1168:23-1169:2). At the same time, Mr. Houweling remarked to Mr. Iverson on two

27   separate occasions that this was "the best [the] plants have ever looked." (*Id.* Tr.

28   (Iverson) at 163:4-7.) Even defense witnesses were forced to concede that

1  Houweling's gets "the best results and gets the best bang for the buck using chlorine
2  dioxide." (*Id.* Tr. (Binfield) at 1086:10-15.)

3      Here, it is entirely reasonable to conclude that Houweling's might revert to its
4  infringing behavior absent an injunction, and Houweling's has not provided any
5  reason as to why it would not switch back to using $CH_2O$'s patented method of
6  providing chlorine dioxide absent an injunction.[1] Thus, Houweling's voluntary
7  cessation does not mitigate $CH_2O$'s showing of irreparable harm or the inadequacy of
8  money damages.

9      **B.   $CH_2O$ Has Demonstrated Entitlement to a Permanent Injunction**

10     Of the four factors outlined in *eBay v. MercExchange LLC* guiding a court's
11 decision on an injunction, Houweling's only addresses three. 547 U.S. 388, 391-93
12 (2006). Houweling's failure to provide any argument regarding the public interest,
13 presumably, is a concession that the public interest favors the grant of a permanent
14 injunction. Houweling's other arguments do not fare any better, as discussed below.

15     **1.   Irreparable Injury**

16     Houweling's does not dispute that $CH_2O$ suffered the injuries detailed by $CH_2O$
17 in its opening brief. Instead, Houweling's argues that: (1) $CH_2O$ is not entitled to a
18 permanent injunction because it did not seek a preliminary injunction; (2) $CH_2O$'s
19 irreparable harms were caused by Meras, not Houweling's; and (3) $CH_2O$ would not
20 continue to be harmed because Houweling's has switched to hydrogen peroxide. (*See*
21 D.I. 496, at 4-6.)

22 _____

23 [1] According to Houweling's, its switch to hydrogen peroxide means that "$CH_2O$ was
24 wrong about" hydrogen peroxide being inferior. (*See* D.I. 496, at 6 n.4.) $CH_2O$ never argued at trial that switching to hydrogen peroxide would be impossible. Rather, $CH_2O$ proved at trial that hydrogen peroxide did not offer the same benefits as the
25 patented technology. Houweling's switch to an inferior method does nothing to undermine that fact proved at trial. Moreover, Houweling's offers no evidence that its
26 use of hydrogen peroxide provides the benefits or savings that $CH_2O$ demonstrated at trial are provided by its patented chlorine dioxide technology. Indeed, Houweling's
27 has made overtures to $CH_2O$ requesting that it re-install at Houweling's facilities the patented technology.

28
                    CH_2O'S REPLY ISO MOTION FOR PERMANENT INJUNCTION
                    3    Case No. CV-13-8418 JAK (GJSx)

First, CH₂O's decision not to seek a preliminary injunction has no bearing on this case. A preliminary injunction and a permanent injunction are "distinct forms of equitable relief that have different prerequisites and serve different purposes*." Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed.Cir.1996). Thus, as district courts have widely recognized, "[t]he patentee seeking a preliminary injunction is not a prerequisite to a finding of irreparable harm." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2:07-CV-00331-PMP, 2013 WL 3043668, at *6 (D. Nev. June 17, 2013).[2] "Indeed, principles of judicial efficiency and sound judicial administration strongly militate against such a rule, lest the courts be besieged with motions for preliminary injunction filed to preserve the right to permanent injunctive relief." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 2119410, at *13 (E.D. Va. May 23, 2011), *modified*, 946 F. Supp. 2d 459 (E.D. Va. 2013); *see also Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 788 F. Supp. 2d 71, 75–76 (E.D.N.Y. 2011) ("Obviously, the standard for preliminary injunctive relief in this regard is different from the standard for permanent injunctive relief, and the plaintiff's decision not to seek preliminary injunctive relief does not indicate a lack of irreparable harm.").

Although a patentee's decision not to seek preliminary relief may lead to an inference that it was not irreparably harmed, that inference must be weighed alongside actual evidence of irreparable harm. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) (patentee's decision as to when to seek injunctive relief is "but one factor to be considered by a district court in its analysis of irreparable harm"). When, as here, the patentee presents real evidence of real irreparable harm, the patentee's decision not to seek a preliminary injunction is "of no import." *Quality Edge, Inc. v. Rollex Corporation*, 2016 WL 4536327, *2 (W.D. Mich. 2016); *Halo*, 2013 WL 3043668, *6-*7 (finding that "Halo's failure to file for a preliminary

---

[2] A different opinion issued by the *Halo* district court (regarding willful infringement) ended up on appeal to the Supreme Court.

1  injunction is not enough to tip the balance of the evidence in favor of Pulse" because
2  "Halo has made a showing that it has suffered lost sales and a loss of customer
3  goodwill").

4          Second, the harm outlined in CH$_2$O's opening brief was not caused solely by
5  Meras. Houweling's decision to switch to a low-cost infringer contributed
6  significantly to CH$_2$O's harm. The hydroponic irrigation business is built on
7  relationships and reputation. Thus, after CH$_2$O proved the technology at Houweling's
8  farm, growers "saw the results, then other growers want[ed] to [use the '470
9  technology] also." (D.I. 481-4, Tr. (Iverson) at 158:19-21.) On the flip-side, when
10 Houweling's switched from using CH$_2$O to using a low-cost infringer, others followed
11 as well, such as Sun Select and Sunnyside. (*See id.* at 170:12-171:10.) Meras caused
12 irreparable harm to CH$_2$O by providing a low-cost infringing method and
13 Houweling's caused irreparable harm to CH$_2$O by switching to Meras, lending
14 credibility to Meras and signaling to the industry that using infringing technology was
15 acceptable.

16         Lastly, Houweling's argues that CH$_2$O would not continue to suffer irreparable
17 injury because it Houweling's has switched to hydrogen peroxide. But, as discussed
18 above, Houweling's has failed to make it "***absolutely*** clear" that it would not switch
19 back. *See Adarand*, 528 U.S. at 222 (emphasis in original). Moreover, Houweling's
20 has submitted no evidence that hydrogen peroxide provides the benefits or savings of
21 the patented chlorine dioxide technology and, indeed, made overtures to CH$_2$O to re-
22 install the patented technology at Houweling's facilities. Thus, Houweling's
23 voluntary cessation has no significance in this analysis.

24              **2.    Money Damages Are Inadequate**

25         Houweling's makes the same failing arguments with respect to this *eBay* factor.
26 Houweling's argues that: (1) money damages are inadequate because Houweling's
27 has switched to hydrogen peroxide; and (2) Meras, not Houweling's, caused CH$_2$O's
28 irreparable injury. For the reasons discussed above, these arguments are unavailing.

Simply put, both Meras's and Houweling's infringement caused $CH_2O$ to lose the years it put into developing the patented technology and proving a market for it and caused the loss of the right to exclude others guaranteed by the grant of a patent—harms that cannot be cured by money damages.

In addition, both Meras and Houweling's have indicated that they do not have the financial ability to satisfy the monetary judgment against them. Without receiving monetary damages from either Defendant, and without an injunction to prevent the Defendants from infringing in the future, $CH_2O$ would be left with no remedy at all. The Federal Circuit has expressly recognized concerns about the ability of a prevailing plaintiff to collect on its judgment as a "factor [that] favors a finding of irreparable harm." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154-55 (Fed. Cir. 2011).

### C.      Balance of the Hardships

Houweling's argues that the balance of the hardships weighs in its favor because it has already stopped using the infringing technology. (*See* D.I. 496, at 8.) This argument defies logic. If anything, the balance of the hardships weighs more in favor of $CH_2O$ as a result of Houweling's voluntary cessation. Because Houweling's has already stopped using the infringing technology, an order compelling them to do so would cause them no hardship other than to prevent them from switching back to infringing technology.

Houweling's also argues that the scope of the proposed injunction is too broad—thus causing additional hardship.[3] But Houweling's has not pointed to any activity that the proposed injunction would prohibit it from doing that was not found to be infringement by the jury. A permanent injunction "must depend upon the

---

[3] Houweling's repeats this same argument in Part III of its response. $CH_2O$ refers the Court to this section in reply, as well as to the extensive discussion of the same topic in $CH_2O$'s concurrently-filed reply to Meras's opposition to the motion for permanent injunction.

1   circumstances of each case, the purpose being to prevent violations, the threat of
2   which in the future is indicated because of their similarity or relation to those unlawful
3   acts" which have been committed in the past." *N.L.R.B. v. Express Pub. Co.*, 312 U.S.
4   426, 436–37 (1941). Here, as explained in detail in CH$_2$O's concurrently filed reply
5   to Meras's response, the scope of the proposed injunction is appropriate under the
6   circumstances of this case.

7   **III.    CONCLUSION**

8           CH$_2$O has demonstrated entitlement to a permanent injunction under the four
9   *eBay* factors. Accordingly, CH$_2$O asks that the Court grant its motion and enter the
10  proposed order.

11

12  Dated:  January 30, 2017              FISH & RICHARDSON P.C.

13                                        By: */s/ Christopher S. Marchese*
14                                            Christopher S. Marchese
15                                            marchese@fr.com
                                              Attorneys for Plaintiff, CH$_2$O, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

## __CERTIFICATE OF SERVICE__

   The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 30, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.  Any other counsel of record will be served by electronic mail and regular mail.


          /s/ Christopher S. Marchese
          Christopher S. Marchese
          marchese@fr.com